ROSS v. CITY OF MINNEAPOLIS.

SAME v. CITY OF ST. PAUL.

(Circuit Court, D. Minnesota. December 3, 1894.)

PATENTS—DEVICE FOR RELEASING FIRE-ENGINE HORSES—INFRINGEMENT.

Bragg's patent, No. 173,261, for releasing horses in fire-engine houses by a combination of an electro-magnet, armature, trip levers, and suspended weight acting upon the latches or fastenings of the horses' stalls, though describing an electro-magnet in a horizontal position, used with an open circuit, *held* to be infringed by devices in which the electro-magnet is arranged vertically, and a closed or open circuit is employed, with equivalent mechanical devices in different positions.

These were suits in equity brought by Nathan O. Ross, trustee, against the City of Minneapolis and the City of St. Paul, respectively, for infringement of letters patent granted to Robert Bragg for a device for releasing fire-engine horses.

David E. Simpson (A. C. Paul, of counsel), for defendant city of Minneapolis.

Leon T. Chamberlain (T. D. Merwin, of counsel), for defendant city of St. Paul.

NELSON, District Judge. Complainant brings these suits against the city of Minneapolis and the city of St. Paul, Minn., for infringement of letters patent No. 173,261, issued to Robert Bragg, February 8, 1876, upon his application dated November 6, 1875. This is a patent for releasing the horses in fire-engine houses by a specific combination of an electro-magnet, armature, trip levers, and suspended weight acting upon the latches or fastenings of the horses' stalls. In his specification the patentee states:

"The object of my invention is to provide an arrangement by which I can obtain sufficient power from the action of an electro-magnet and its armature to perform certain stated duties. * * * I will describe the arrangement and operation of my invention with especial reference to its application on fire-engine houses, in which it can be used for the purposes of releasing the horses from their stalls. * * * Let A represent an electromagnet, with which the wire of the fire-alarm telegraph is connected, so that when an alarm is telegraphed the electric current will pass through the magnet and cause the armature, B, to be drawn up against it. C is an upright trip bar, which is pivoted at its lower end, and has a circular notch, d, formed on one side of its upper end. A weight, D, is arranged to slide up and down beside the trip bar, and this weight has a roller, e, on one side, which can be caught in the notch, d, in the trip bar, when it is desired to suspend the weight and set the device. * * * Now, it is evident that when the electric current enters the magnet the armature will be drawn up against it, thus releasing the weight, D, from the notch in the trip bar, and allowing it to drop. This weight can be connected directly with the device to be operated. * * *"

The drawing shows the electro-magnet in a horizontal position, with the armature kept withdrawn from it by a small spring; hence the open circuit must be employed.

The infringement alleged is solely of the second claim, which is as follows:

"The combination, with the armature, B, of an electro-magnet, of the trip lever, C, and suspended weight, D, the several parts constructed and arranged to operate in the manner substantially as and for the purpose specified."

I have examined the various patents and models in evidence, and find none which embraces the combination and arrangement described in the second claim of the complainant's patent. The defendants admit that they use devices for releasing the horses in their fire-engine houses by the falling of a weight attached to the latches of the stalls, controlled by the action of an electro-magnet with its armature. The device used by the city of Minneapolis may be described as follows: An electro-magnet is arranged vertically, with the armature downwards. The closed circuit system is employed, by which the armature is supported normally by the action

of the current. On an alarm being given, the current is broken, the armature falls, and strikes a trigger, which releases the weight attached to the latches of the stalls, and frees the horses. In the device used by the city of St. Paul, the open circuit system is used. An electro-magnet is suspended vertically, with the armature downwards, hinged at one end. Below this is a pivoted arm, arranged so as to fall inwards by its own gravity, unless restrained. The free end of the armature rests on the top of this arm, and against a small projection or heel on the outside of it, which prevents the arm from falling inwards. To this arm is attached a vertical rod, a little above the pivot, the lower end of which connects with a bell-crank lever; the other end of this lever is made in the form of a hook, which engages and supports the free end of a strap hinge, which in its turn supports the weight attached by a cord to the latches of the stalls. On the current being applied by the sounding of an alarm, the armature is drawn up against the magnet, the pivoted arm is released and falls inwards, thus operating on the bell crank by means of the vertical rod, the hook is withdrawn, the strap hinge falls, and the weight is released.

Defendants' counsel contend that neither of these devices is a copy or an infringement of the Bragg patent, and in support of their proposition show that the magnets are vertical, instead of horizontal, that the trip bars are not pivoted or provided with notches as in the specification of the patent, and that there are various differences in the operation of the devices. Also, that in the Minneapolis device the closed instead of the open circuit is used, whereby the armature is constantly in contact with the magnet until released by the current being broken, instead of being away from the magnet and drawn in contact with it when the current is applied. Further, that, if the second claim of the Bragg patent be held to be valid, complainant must be restricted to and limited by the description in the specification, and hence defendants' devices do not infringe. I cannot adopt this view of the case. It is true there are certain differences in position, shape, and appearance between the devices used by the defendants and those described in the specification, but these, in my opinion, are mere matters of detail. The result obtained is the same, and, in order to obtain it, the same appliances are used, in substantially the same manner. I think a fair construction of the second claim of the patent, and an examination of the devices used by the defendants, show infringement of the second claim of the Bragg patent, and that the complainant is entitled to a decree in each suit for a perpetual injunction, and to an accounting, with a reference to a master, with costs. Ordered accordingly.